# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3054

_____

Creative Calling Solutions, Inc.,

*Plaintiff - Appellant*,

v.

LF Beauty Ltd.,

*Defendant - Appellee*.

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: March 24, 2015
Filed: August 21, 2015

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Creative Calling Solutions, Inc., an Iowa corporation, sued LF Beauty Ltd. of Hong Kong for breach of contract. The district court granted LF Beauty's motion to dismiss for lack of personal jurisdiction, after considering the contract and affidavits submitted by both parties. We reverse the dismissal because a reasonable jury could find that LF Beauty had sufficient contacts with Iowa to justify the exercise of

personal jurisdiction and that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## I.

Creative Calling, an Iowa corporation with its principal place of business in Iowa, designs, develops, and sells beauty products. LF Beauty is a Hong Kong corporation, with its principal place of business in Hong Kong, that provides services, including product and sample development, shipping oversight, and production planning. LF Beauty contacted Alan Unger, the President and CEO of Creative Calling, in Iowa to solicit business. LF Beauty sought to manage Creative Calling's operations infrastructure in China in exchange for a fee and e-mailed Unger a PowerPoint presentation describing the proposed services. After three months of negotiation, Unger traveled to Hong Kong to execute the contract between LF Beauty and Creative Calling in March 2012.

The contract provided that LF Beauty would oversee Creative Calling's operations in China, including managing production processes at factories of third parties. LF Beauty managed Creative Calling's supply chain pursuant to the contract and communicated extensively with Creative Calling electronically and by telephone for nearly two years.

The contract also required that LF Beauty make pre-production samples, that Creative Calling approve those samples, and that LF Beauty's expenditures on freight to send samples to Creative Calling would be passed through with no additional fee. LF Beauty shipped thousands of both pre-production and production samples that were made in China by third party factories from its office in Hong Kong to Creative Calling in Iowa for close to two years.

In exchange for these services, the contract required Creative Calling to pay LF Beauty a fee or, in some circumstances, to reimburse LF Beauty for costs. LF Beauty was to receive payments from Creative Calling's customers on its behalf, and then remit to Creative Calling the proceeds less certain deductions. Pursuant to those provisions, LF Beauty made significant payments to Creative Calling in Iowa. No LF Beauty agents or employees visited Iowa to establish or maintain its business relationship with Creative Calling, and LF Beauty has no connection with Iowa outside of this business relationship.

Almost two years after Creative Calling and LF Beauty executed the contract, Creative Calling filed suit in Iowa court. Creative Calling alleged that LF Beauty breached the contract by sending samples that could not be used for marketing or sales for various reasons, including that the sample containers were incorrectly labeled, that the samples were contaminated, and that the samples were improperly packaged. LF Beauty removed the suit to federal court and moved to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Both parties submitted affidavits with their briefing on the motion to dismiss, and LF Beauty filed the contract as an exhibit. The district court granted LF Beauty's motion, relying in part on the contract and the parties' affidavits. Creative Calling appeals, and we review the district court's decision *de novo*. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004).

II.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead "sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011) (alteration in original) (internal quotation marks omitted). But where, as here, the parties submit affidavits to bolster their positions on the motion, and the district court relies on the evidence, the motion is in substance

one for summary judgment. *Radaszewski ex rel. Radaszewski v. Telecom Corp.*, 981 F.2d 305, 309-10 (8th Cir. 1992); *cf. Blair v. Wills*, 420 F.3d 823, 826-27 (8th Cir. 2005). The plaintiff bears the burden of proof on the issue of personal jurisdiction, and must establish jurisdiction by a preponderance of the evidence at trial or when the court holds an evidentiary hearing. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). At the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to Creative Calling, is sufficient to support a conclusion that the exercise of personal jurisdiction over LF Beauty is proper. *See Radaszewski ex rel. Radaszewski*, 981 F.2d at 309-10; Fed. R. Civ. P. 56(a).

A federal court may assume jurisdiction over a defendant in a diversity action if the forum State's long-arm statute permits the exercise of personal jurisdiction and that exercise is consistent with the Due Process Clause of the Fourteenth Amendment. *K-V Pharm. Co.*, 648 F.3d at 592. Iowa's long-arm statute is co-extensive with "the widest due process parameters" permitted by the Constitution. *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005). The district court may thus assert personal jurisdiction over LF Beauty if the exercise of jurisdiction comports with due process.

The Due Process Clause permits the exercise of "general jurisdiction" to hear "any and all claims against" a defendant if its "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (internal quotation marks omitted). "Specific jurisdiction," by contrast, is proper when a defendant has certain contacts with the forum State and the cause of action arises out of those contacts. *Id.* Creative Calling argues that LF Beauty is subject to specific jurisdiction in Iowa to answer Creative Calling's breach of contract claim.

Due process requires that a defendant have certain "minimum contacts" with the forum State for the State to exercise specific jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). This connection must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985) (internal quotation mark omitted). The defendant's contacts with the forum must thus be more than "random, fortuitous, or attenuated," and must permit the defendant to "reasonably anticipate being haled into court there." *Id.* (internal quotation marks omitted).

To assess whether a defendant has purposefully availed itself of the forum and established minimum contacts, we examine the nature, quality, and quantity of the defendant's contacts with the forum State and the connection between the cause of action and those contacts. *See Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522-23 (8th Cir. 1996). For contractual claims, personal jurisdiction is proper where the defendant "reach[es] out beyond one state and create[s] continuing relationships and obligations with citizens of another state." *Burger King Corp.*, 471 U.S. at 473 (internal quotation marks omitted). But a contract with a citizen of a State alone is insufficient to establish minimum contacts with that forum. *Id.* at 478. To determine whether a defendant purposefully established minimum contacts with the forum, we must evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*. at 479.

Creative Calling has presented sufficient facts for a reasonable jury to conclude that LF Beauty established minimum contacts with Iowa that permit the exercise of personal jurisdiction. A defendant's solicitation of a business relationship with a company incorporated in the forum State that takes place within that State is a relevant contact in determining whether its courts may exercise personal jurisdiction.

*See Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 822-24 (8th Cir. 2014). LF Beauty first contacted Creative Calling in Iowa to solicit business. LF Beauty then corresponded numerous times with Creative Calling via e-mail and telephone while negotiating the contract for the next three months. After the contract negotiations had concluded and the contract was executed, Creative Calling and LF Beauty communicated daily via e-mail and telephone for close to two years. While such communications "do not themselves establish jurisdiction," they "may be used to support the exercise of personal jurisdiction." *Digi-Tel Holdings, Inc.*, 89 F.3d at 523. At least sixteen LF Beauty employees corresponded with Creative Calling in Iowa via e-mail during this time, thus supporting the conclusion that LF Beauty purposefully established numerous contacts within the forum state. *See K-V Pharm. Co.*, 648 F.3d at 593-95.

Creative Calling argues that LF Beauty's shipment of samples to Creative Calling in Iowa is a significant contact with the forum. LF Beauty, citing *Digi-Tel Holdings*, responds that mailing samples is not a significant contact because the samples were not LF Beauty products and the shipping was only incidental to LF Beauty's performance of the contract. We said in *Digi-Tel Holdings* that a defendant's shipment of cell phone samples "into the forum represents a 'casual' or 'fortuitous' contact rather than a significant contact with the forum." 89 F.3d at 523. But in *Digi-Tel Holdings*, the defendant shipped only four samples to the plaintiff in the forum State, and there is no indication that the contract required or contemplated that shipment. *See id.*

The contract in this case explicitly called for LF Beauty to make pre-production samples and required Creative Calling to approve those samples. The agreement thus contemplated that LF Beauty would send those samples to Creative Calling at its only place of business in Iowa. The contract also plainly implied that LF Beauty was responsible for shipping pre-production and production samples, as it required Creative Calling to reimburse LF Beauty for the costs of shipping samples. LF

-6-

Beauty mailed thousands of both pre-production and production samples fabricated in China to Creative Calling in Iowa, according to an affidavit introduced by Creative Calling. Although LF Beauty countered this affidavit with evidence that some of the production samples were mailed directly from the factories in China to Creative Calling, we must consider the evidence in the light most favorable to Creative Calling at this stage of the proceeding. Thus, unlike in *Digi-Tel Holdings*, "the terms of the contract and the parties' actual course of dealing" demonstrate that LF Beauty purposefully established significant contacts with Iowa by mailing thousands of samples. *See Burger King Corp.*, 471 U.S. at 479. That LF Beauty did not itself manufacture the samples, and that the samples were of Creative Calling's products, does not alter the conclusion that LF Beauty's shipment of thousands of samples pursuant to the contract constitutes a significant and purposeful connection with the forum.

The contract in this case also provided for LF Beauty to receive payment from customers on behalf of Creative Calling and to forward these payments (less a deduction for LF Beauty) to Creative Calling. This type of contractual provision, requiring a defendant to remit payment to a company located in the forum State, and the defendant's performance of that term, is a purposeful contact with the forum. *K-V Pharm. Co.*, 648 F.3d at 593-94. According to Unger of Creative Calling, LF Beauty in fact made significant payments to Creative Calling in Iowa.

In sum, we conclude that Creative Calling has identified sufficient facts to support a reasonable inference that LF Beauty established contacts with Iowa that permit the exercise of personal jurisdiction. LF Beauty first contacted Creative Calling in Iowa to solicit its business, engaged in daily communications with Creative Calling for almost two years after contractual negotiations had concluded, shipped thousands of pre-production and production samples to Iowa pursuant to the contract, and remitted payments to Creative Calling in Iowa under the agreement. Because Creative Calling's breach of contract claim alleges that LF Beauty delivered defective

samples and thus arises out of and relates to this connection with Iowa, LF Beauty's minimum contacts permit the exercise of specific jurisdiction in this case. *See Burger King Corp.*, 471 U.S. at 472.

Even where a party has minimum contacts with a forum, jurisdiction can still be unreasonable. The Due Process Clause forbids the exercise of personal jurisdiction "under circumstances that would offend 'traditional notions of fair play and substantial justice.'" *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 790 (8th Cir. 2005). To assess whether the exercise of jurisdiction over LF Beauty, a foreign defendant, is reasonable, we consider the interests of the forum State, the burden on the defendant, and the plaintiff's interest in obtaining relief. *See Asahi Metal Indus. Co.*, 480 U.S. at 113-15. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," *id.* at 115 (internal quotation marks omitted), although "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id*. at 114.

Minimum contacts have been established here, and Iowa "has an obvious interest in providing a local forum in which its residents may litigate claims." *Digi-Tel Holdings, Inc.*, 89 F.3d at 525. The parties' respective interests do not militate strongly against personal jurisdiction in Iowa. While defending a suit in Iowa would be burdensome for LF Beauty, obtaining relief through litigation in Hong Kong would be burdensome for Creative Calling. The allegedly defective samples that are the focus of this breach of contract suit are located in Iowa; at least some of the samples likely would be introduced at trial. LF Beauty contends that five necessary witnesses—three current and two former LF Beauty employees—are located in Hong Kong. Creative Calling responds that three LF Beauty employees who will be important witnesses are located in New York and Texas, and that other witnesses are

located in Iowa.  Because the samples are in Iowa, there are witnesses in both Hong Kong and Iowa, and three witnesses who are LF Beauty employees are in the United States, the respective interests of the two parties do not weigh against the exercise of jurisdiction over LF Beauty in Iowa.  *Cf. K-V Pharm. Co.*, 648 F.3d at 595; *Digi-Tel Holdings, Inc.*, 89 F.3d at 525.  In these circumstances, the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.

LF Beauty responds by citing the contract's selection of Hong Kong courts as a non-exclusive forum and its choice of Hong Kong law.  LF Beauty contends that these provisions diminish Iowa's interest in providing a forum for its residents and show that litigation in Hong Kong is not inconvenient for Creative Calling.  Creative Calling's assent to non-exclusive jurisdiction in Hong Kong, if enforceable, could establish that *Hong Kong courts* may exercise personal jurisdiction *over Creative Calling* under United States law.  *Burger King Corp.*, 471 U.S. at 472 n.14.  But the forum selection clause, which contemplates the possibility of a forum *other than* Hong Kong, does not impact significantly whether a federal court in Iowa may assume personal jurisdiction over LF Beauty.  Similarly, the selection of Hong Kong law would be a relevant, but not dispositive, factor in determining whether *Creative Calling* established minimum contacts *with Hong Kong*, *see Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995), but the choice-of-law clause does not make the exercise of jurisdiction in Iowa unreasonable.  As we said in *Minnesota Mining & Manufacturing Co. v. Nippon Carbide Industries Co.*, 63 F.3d 694 (8th Cir. 1995), "we must determine whether [the forum State] has jurisdiction before we consider what law will be applied," and a forum with jurisdiction often must "apply the law of another State or country."  *Id*. at 698.

\*       \*       \*

For these reasons, we reverse the district court's judgment dismissing the action for lack of personal jurisdiction over LF Beauty, and remand the case for further proceedings.

_____